# MEMORANDUM

FILED
IN CLERKS OFFICE

2019 JAN 22  AM 8: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

TO:     The Honorable Chief U.S. District Judge Patti B. Saris
        The Honorable Senior U.S. District Judge Mark L. Wolf

FROM:   Cameron LaCroix, U.S. Probationer

DATE:   January 17, 2019

RE:     Letter Regarding U.S. Probation Officer Justin Prophet's Conduct
        Case No's 14-CR-10227-PBS & 14-CR-10162-MLW

---

Dear Chief U.S. District Judge Saris and Senior U.S. District Judge Wolf,

I am submitting the letter to document some concerns I have regarding my current U.S. Probation Officer Justin Prophet. According to the website http://www.uscourts.gov, the mission of U.S. Probation is "to assist the federal courts in the fair administration of justice and to bring about long-term positive change in individuals under supervision". In fear of retaliation, I am filing this letter with the Court to protect my rights as a citizen of the United States and to ensure that the Court is fully aware of his behavior.

Please allow me to briefly summarize some of the incidents of which have occurred in which do not assist in bringing positive changes to ~~the~~ me.

**11/11/2018 Home Visit**
On November 11, 2018 U.S. Probation Officer Justin Prophet arrived at my residence. Upon his arrival, I was on the phone with my fiancé and visibly saddened, emotional, and nervous. I apologized for my emotional state and explained that she just went through surgery and her face looked very different. In response to this, he indicated to me that I should seek counseling and was "struggling". I asked Mr. Prophet if he would permit me to travel to South Korea in order to attend my fiancé's Visa Interview at the U.S. Embassy in Seoul. He told me that he would try if I gave more money in regards to my restitution versus the amount specified in my Court docket 14-CR-10227-PBS. He then said that this makes it look better on his behalf when he asks his supervisor for travel permission. Essentially he put a price tag on my relationship and U.S. Probation records should and will indicate that I paid an additional $100.00 over my normal amount during the month of December 2018. It was during this meeting in which I began to question his character and intents.

**Violation Report, Form 12A**
On December 5, 2018 U.S. Probation Officer Justin Prophet filed a Probation Form 12A titled "Report on Offender Under Supervision" in regards to two alleged violations of non-compliance. I believe that this report was drafted in its manner requesting no action by the Court in order to deny me due process by taking away a chance to defend myself and setting me up. My basis for this assumption is based on the omission of material facts as to what transpired before the home

visit, during the home visit, and afterword. The 12A Report was drafted on Wednesday, December 5, 2018 and ultimately showed up on the docket on Thursday, December 6, 2018. Upon learning of the violation report I became concerned that Mr. Prophet was trying to have my liberty restricted.

To support my conclusion, I had immediately noticed that it contained a false statement as I never admitted to using any computer for two hours. Secondly, Mr. Prophet was well aware that I was thinking about resigning from the job weeks prior as I had informed him in an e-mail of my intention. I reaffirmed my intention again during a home visit on 11/11/18. Furthermore, I also texted him indicating that I might take a job delivering packages, in which he supported and told me that "UPS is always hiring". There are other sections of the report which are untrue as to his actions in which he took as a response to this situation. For example, he never talked to me about his claim to further "facilitate Mr. Lacroix's skill development".

On Friday December 7, 2018 I interviewed at Habitat For Humanity and was offered a job. During the December 4, 2018 home visit, USPO Prophet directed me to not accept any employment without his authorization. I informed Habitat's staff that I would think about it and get back to them very soon.

On Saturday December 8, 2018, I e-mailed USPO Supervisor Lisa Paiva with a CC to be sent to USPO Justin Prophet requesting permission to accept a job offer. I wrote "I have an offer right now to be employed at Habitat For Humanity and am asking if I may take it. " Before the close of the e-mail I added that "No offense to Justin but I could not reach him via e-mail or text as I tried multiple times."

Following this e-mail, U.S. Probation Officer Justin Prophet e-mailed his supervisor and asked her if she wanted to "game plan" on Monday regarding me. It was clear to me that although he recommended in the report no action, he wanted to continue this matter. A few hours later he e-mailed her again and wrote that "I think Mr. Lacroix would benefit from an Administrative Hearing" and asked if she agreed. Additional e-mails create the inference, in my opinion, that there might have been concerns that Probation would look bad if they ignored my request to accept the job as a driver/sales associate at Habitat For Humanity.

**12/4/18 Home Visit**
What did occur during this home visit was that he asked me about what happened at my prior place of employment. I conveyed that I didn't want to be there anymore and he asked me, "You didn't get fired?" I responded no and that I quit. Immediately after this, he became angry and turned into someone totally different. He began to yell at me, pounded his hand on my coffee table while going over my conditions, implied that I was dishonest, and used profanity. Due to his behavior, I became extremely nervous, shaky, and start to tremble with fear. He questioned if the computer had monitoring software on it and I said no, and added that I thought he was going to do it now. He replied, "I don't do that shit! That's your job!" I told him that I had witnessed my prior officer access a website getrcom.net and download it onto the device. He yelled back "Well I'm not her!" Mr. Prophet went to his vehicle for a moment in which I wiped my eyes and did a brief meditation as I could not understand why he was acting like this. When he came to my door, I asked him if he could come back inside for a moment. He followed and I told him "I

feel like you hate me… ". He finally calmed down and then said "I don't hate anybody. I just want honesty and for you to do good."

**12/13/2018 Meeting at U.S. Probation at 1 Courthouse Way**
During this meeting I advised USPO Prophet that his report contained a false statement. He denied this stating that he would never do that. Also present was U.S. Probation Officer Supervisor Lisa Paiva, of whom recalled to me at a later date that I did in fact mention this, although her memory of the meeting was "vague".

**01/12/2019 Home Visit**
On January 12, 2019 USPO Prophet conducted a home visit. In the beginning of this meeting Mr. Prophet asked me "do you have a laptop". I replied that I did not and asked him if he wanted to search my residence. He declined to do so, saying "Nah, I don't have to do that". Mr. Prophet said to me that "You do not use the internet on your phone huh?" I then put my phone on the couch and slid it over to him and told him to check it out. He picked up the device, examined it, then gave it back to me. Following this, he asked that I provide a urinalysis. While attempting to provide a sample, I advised that I was a bit bladder shy. Inside I had felt uneasy due to our prior incidents and I apologized to him for not being able to go fast enough. He eventually closed the restroom's door and I heard his feet move away. With the door closed, he began asking me questions which could have only been known to him if he had read a few personal pieces of mail that were located in my room. What transpired was that he had closed the door and then walked to the opposite end of my home and began reading personal mail. I am not an attorney but the fact that he read several personal letters addressed to me made me feel very uneasy and invaded. I believe the action of seeing a letter in plain view from a distance versus examining it up close to read it's contents transforms a probation officer's inspection into a search. He then asked me personal questions pertaining to my fiancé based on his reading of the letters. I would have chosen not to answer if I hadn't been worried that a refusal would have resulted in my potential revocation. Included in his past Form 12A, he wrote that any future non-compliance would result in a possible Court action. For the record, I am of course referring to the condition of supervised release in which my judgement states "You must answer truthfully the questions asked by your probation officer".

**Status**
I am currently trying to setup a meeting through USPO Prophet's Supervisor Lisa Paiva in order to try to resolve these issues and ultimately get a new probation officer. The meeting has yet to be scheduled.